IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-595-FL

| | |
|---|---|
| ANGELA NEIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WARREN COUNTY SCHOOLS; KATRINKA R. BREWER, Principal of Mariam Boyd Elementary School; RAY SPAIN, Superintendent at Warren County Schools; KEEDRA WHITAKER, Chief Human Resources Officer at Warren County Schools; CHELSEA JENNINGS, Chief Academic Officer at Warren County Schools; DONNA ROBERTSON, Payroll and Benefits Specialist at Warren County Schools; SHEKENA SMITH, Administrative Assistant at Mariam Boyd Elementary School; KENDRA DAVIS, Assistant Principal at Mariam Boyd Elementary School; ADRIENE STEWART, School Counselor at Mariam Boyd Elementary School; MYLICY POWELL, Head Custodian at Mariam Boyd Elementary School; BLAIR BRANTLEY, Kindergarten Teacher at Mariam Boyd Elementary School; ANNETTE CATES, Teacher Assistant at Mariam Boyd Elementary School; MIA TAYLOR-TERRY, School Nurse at Mariam Boyd Elementary School; MARTINA TAYLOR; and STEPHANIE SEWARD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ORDER |
| Defendants. | ) |

This matter comes before the court on defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 86) and to stay scheduling conference (DE 109), and pro se plaintiff's motions "for [c]laim of [r]elief" (DE 89), for calendar request (DE 103), and for expedited scheduling conference (DE 106). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court grant the defendants' motion to dismiss as to all but one of plaintiff's claim and deny the remaining motions. (DE 27). The parties filed objections to the M&R and responses thereto. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion to dismiss is granted as to all but two of plaintiff's claims, and the remaining motions are denied.

## STATEMENT OF THE CASE

Plaintiff, a former teacher at Miriam Boyd Elementary School in Warren County during the 2018-2019 academic year, commenced this action pro se November 6, 2020, asserting that her former employer, defendant Warren County Schools, discriminated against her based on her national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). In amended complaint filed December 7, 2021, plaintiff asserts additional statutory and common law claims against individual defendants, who are assertedly school employees. Plaintiff seeks injunctive and declaratory relief, various damages, and costs.

Defendants filed instant motion to dismiss the operative complaint[1] on the basis that it fails to state a claim for relief. In support of their motion, defendants rely on plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). After said motion, plaintiff filed what is captioned as the instant "Claims for Relief Motion," which

---

[1] Hereinafter, all references to the complaint in the text or "Compl." in citations are to plaintiff's amended complaint. (Am. Compl. (DE 82)).

enumerates the statutes she alleges have been violated and the compensation she alleges she is owed. This was later followed by plaintiff's filing of the instant motions for calendar request, comprising a state court form requesting a case management conference, and for an expedited initial status conference. Thereupon, defendants filed the instant motion to stay scheduling conference activities, suggesting that the court's March 8, 2021, order, staying the parties' scheduling conference activities pending decision on motion to dismiss, was still in effect.

After referral, the magistrate judge entered M&R addressing all pending motions. He recommends that defendants' motion to dismiss be granted as to each of plaintiff's claims except for her Title VII claim for national origin discrimination. He further recommends that plaintiff's motion for claims for relief be denied as moot and the remaining motions and requests regarding scheduling be denied as premature. Plaintiff filed objections to the dismissal of any of her claims. Defendants filed objection to recommendation that their motion to dismiss be denied as to plaintiff's Title VII claim for national origin discrimination.

## STATEMENT OF FACTS

The court incorporates herein for ease of reference the facts set forth in the M&R.

> Plaintiff, who is Jamaican, was a teacher at Miriam Boyd Elementary School in Warren County during the 2018-19 academic year. Plaintiff generally claims that she suffered discrimination and harassment from the school principal and her colleagues because she is Jamaican, and that when she complained about how she was treated, she was retaliated against and her contract was not renewed for the following academic year. Plaintiff contends that she exhausted her administrative remedies with her Charge filed on July 18, 2019 with the . . . EEOC[]. Plaintiff states that she received a Right to Sue Letter on September 4, 2020. Am. Compl. [DE-82] at 2-4.
>
> . . . . [Plaintiff] was told to do tasks for other classes, "rude" comments were made about Plaintiff's food, she was the only certified teacher given hallway duties instead of proctoring the North Carolina end-of-grade exam, she had no Caucasian students in her class, "heat and fume exhaust released from the unit in the classroom" resulting in a student complaining of his eyes burning but the nurse sent the student back to class, Plaintiff's classroom was often not cleaned while others were, a parent or grandparent angrily approached Plaintiff about the homework she

3

was assigning, Katrinka Brewer [("Brewer"), principal of Mariam Boyd Elementary School,] yelled at Plaintiff in front of her class, Plaintiff's sick pay was being docked, and Plaintiff never received tax documents. Id. at 6, 7, 9, 11, 13, 15, 23.

Regarding her nationality-based claims, Plaintiff identifies several specific interactions. Plaintiff describes a text message from another teacher, Defendant Martina Taylor [("Taylor")], in which Taylor said, "I just want to make sure you are comfortable staying with us . . . being that we are veterans at Warren Co." and that Taylor told the Plaintiff, "We're going to send her ass back to Jamaica." Id. at 6. The second interaction involved Katrinka Brewer, the secretary, and a parent talking and laughing about homework given by Plaintiff. Id. Plaintiff described, "[t]hey laughed and talked aloud, 'I am going to send her back to Jamaica, these sight words are not coming on the Reading exam.' They laughed, then Mrs. Brewer came to me, pointed her hand in my face and yelled at me stating, 'do not send anymore [sic] Dolch or Fry Sight word lists home!'" Id. at 11.

Plaintiff contends that students first informed her that she would be fired in January 2019. Id. at 19. Plaintiff was verbally notified on May 17, 2019 by Dr. Keedra Whitaker [("Whitaker")], the Human Resource Director, that her position would be eliminated. Id. Plaintiff states she was informed that her contract would not be renewed for the 2019-20 academic year due to budget constraints. Id. at 20. Plaintiff asserts that another person not of the same national origin as Plaintiff was hired for the same position, and that the school did not fulfill the terms of Plaintiff's contract. Id. at 20-21.

Plaintiff generally concludes that because she is Jamaican she was subjected to a hostile work environment, treated less favorably, and experienced retaliation for complaining about Defendants' actions towards her.

(M&R (DE 112) at 2-4).

## COURT'S DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson,

687 F.2d 44, 47 (4th Cir. 1982).[2]  Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.      Analysis of Defendants' Motion to Dismiss

1.      Plaintiff's Objections

Plaintiff objects to the dismissal of any of her claims.  However, she does not, in large part, direct the court to a specific error in the M&R's analysis beyond general and conclusory objections that she should be able to bring a claim under the pertinent statute.  Her general disagreement as to the following conclusions of the magistrate judge points to no particular error in his legal

---

[2]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

analysis: plaintiff has not exhausted administratively any claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., ("ADA"); Titles VI, 42 U.S.C. § 2000d et seq., ("Title VI"), and VII do not contemplate claims against individual defendants in their personal capacity; plaintiff fails to state adequately a claim for racial discrimination under Title VI as to any defendant; her Title VII claim for a hostile work environment based on her national origin fails due to lack of sufficiently pleaded severe or pervasive offensive conduct; and her claims under the following statutes and grounds lack a basis in the law: Fair Labor Standards Act, the Family and Medical Leave Act, the Social Security Act, the Employee Retirement Income Security Act, the Individuals with Disabilities Education Act, Title IX of the Education Amendments of 1972, the Equal Pay Act, and N.C. Gen. Stat. §§ 95-126 to -160, 14-277.3A, and for federal tax violations and defamation.

Upon careful review of the above legal conclusions in the M&R, the court finds the magistrate judge's analysis of those claims to be thorough, and there is no clear error. The court hereby adopts the recommendation of the magistrate judge as to those claims as its own. For the reasons stated therein, those claims are dismissed. Plaintiff, however, does raise specific, nonconclusory objections to the M&R's conclusions that Warren County Schools is not the proper defendant, reference to which the magistrate judge liberally construed to refer to the proper party, the Warren County Board of Education ("Board of Education"),³ that punitive damages cannot be recovered against a governmental entity like the Board of Education, and that she suffered specific retaliatory adverse actions.

---

³ In what appears to be undisputedly an inadvertent omission by plaintiff, Warren County Schools does not appear in the caption of her most recent complaint. (Compl. (DE 82) at 1). However, given the apparent typographical nature of this error, plaintiff's pro se status, and defendants' acquiescence, the court treats Warren County Schools as a defendant named by plaintiff's complaint.

6

As to plaintiff's assertion that Warren County Schools is the proper defendant, on de novo review, the magistrate judge's conclusion was correct. "[A] governmental entity may only be sued if the law of the state in which the court is located permits it." Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017). Section 115C-40 of the North Carolina General Statutes provides that "the board of education of each county in the State shall be a body corporate" and that it "shall . . . be capable of . . . defending suit . . . against the corporation." N.C. Gen. Stat. § 115C-40. In contrast, school systems are not described statutorily as cognizable legal entities. See id. § 115C-74. Accordingly, the local board of education is the proper party defendant in place of the school system, and the court adopts the M&R's recommendation that the Board of Education be treated as the proper defendant for plaintiff's claims against her former employer.

Likewise, the magistrate judge correctly determined that plaintiff's request for punitive damages fails as a matter of law and must be dismissed. As an initial matter, "[p]unitive damages are not a cause of action" under North Carolina law. Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009). Rather, a claim to punitive damages is dependent on the underlying cause of action. See N.C. Gen. Stat. § 1D-10; see, e.g., Driskell v. Summit Contracting Grp., Inc., 828 F. App'x 858, 871 (4th Cir. 2020) (explaining that "the punitive-damages verdict . . . arose from [plaintiff's] wrongful-discharge claim"). Punitive damages for a Title VII claim, the only type of claim the magistrate judge recommended go froward and which the court allows to proceed, are controlled by 42 U.S.C. § 1981a. Ward v. AutoZoners, LLC, 958 F.3d 254, 263 (4th Cir. 2020).

Section 1981a specifically states that "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)." 42 U.S.C. § 1981a(b)(1) (emphasis added). Beyond the plain statutory indication

7

that defendant Board of Education is a governmental agency under state law, North Carolina's courts have confirmed such. See, e.g., Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 336 n.3 (2009) (explaining that the New Hanover County Board of Education "is a county agency" possessing "governmental immunity"). Thus, § 1981a punitive damages for plaintiff's Title VII claim(s) against defendant Board of Education are not available.

However, the court finds merit in plaintiff's final specific objection that she adequately pleaded that she suffered retaliatory adverse action, contrary to the determination in the M&R. A Title VII retaliation claim requires that a plaintiff allege that she "[1] engaged in protected activity, [2] that [her] employer took an adverse employment action against [her], and that [3] there was a causal link between those events." Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018). The M&R focused on the non-renewal of plaintiff's employment contract as the pertinent adverse action and the causal connection between that and plaintiff's complaints to administrators. Accepting that plaintiff has not pleaded a sufficient causal connection between her complaints and non-renewal of her contract, consideration is required of plaintiff's allegation in her complaint that her "request to Adjust Status to Green Card was denied by Warren County Schools after speaking up about the hostile work environment," and about "discrimination." (Compl. ¶¶ 162, 276).

Title VII protects not only complaints about "employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015). Although plaintiff has not sufficiently pleaded an independent hostile work environment claim, at this juncture, her allegations are sufficient to raise a reasonable inference that she believed, reasonably so, that the conduct towards her constituted unlawful discrimination and an unlawfully hostile workplace, although later facts may demonstrate otherwise. Reading her complaint as a whole, her allegation that she

8

"complained to Chelsea Jennings," ("Jennings") the chief academic officer for Warren County Schools, about discrimination and hostility at work is sufficiently specific to make the reasonable inference that the discrimination and hostility complained of is the national origin discrimination and related hostility that buttresses the complaint and predominates her allegations. (See Compl. ¶¶ 75, 162, 174). Plaintiff sufficiently alleges she engaged in protected activity.

Although not considered by the M&R, the alleged failure to assist or support plaintiff's visa application resulting in its denial constitutes sufficiently adverse action, taking her factual allegations regarding such as true. An act by an employer is materially, and therefore sufficiently, adverse if it is an "act[] . . . likely to dissuade employees from complaining or assisting in complaints about discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 70, (2006). Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue directly, other courts have concluded that efforts to sabotage fatally an employee's efforts to secure their immigration status may constitute materially adverse action. See, e.g., Cordova v. R & A Oysters, Inc., 169 F. Supp. 3d 1288, 1294-95 (S.D. Ala. 2016) (considering FLSA retaliation claim and explaining "[i]t is difficult to see how revoking a promise to sponsor the retaliation plaintiffs for H-2B visas could fail to constitute an 'adverse action' under this standard; without the sponsorship no visa could issue, and without the visa the retaliation plaintiffs could not be guest workers (as they had been in years past) and so could not earn income—an economic loss that presumably would discourage a reasonable worker from registering an FLSA complaint").

Here, plaintiff alleges that defendant Board of Education denied or somehow caused to be denied her request to adjust the status of her "[g]reen [c]ard" in order for her to become a lawful permanent resident. (Compl. ¶¶ 235, 276). For purposes of this order, this allegation raises a reasonable inference of an action adverse to the degree it would dissuade reasonable employees

9

from engaging in protected activity, where denial of such an immigration benefit could deter employees from complaining about discrimination. See Burlington, 548 U.S. at 70.

Finally, the complaint suggests plausibly a sufficient causal nexus between plaintiff's protected complaints and the adverse action of denying her application to adjust her visa status and/or proximately causing it to fail. Significantly close "temporal proximity" between the protected activity and adverse action "is sufficient to establish a causal connection" between the two. Strothers v. City of Laurel, 895 F.3d 317, 336-37 (4th Cir. 2018); see Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 654 (4th Cir. 2021).

Here, although the timeline is not perfectly clear, plaintiff's allegations demonstrate adequately, in light of her pro se status, that her complaints were close in time to the withdrawal of the support of her visa application. She alleges that an immigration attorney, hired or otherwise directed by defendant Board of Education's agents, had been working with her on her application but "around the same time," she "complained to . . . Jennings about discrimination and hostility." (Compl. ¶¶ 161-62). In plaintiff's own words, "[s]ubsequently, [she] heard noting more from . . . the attorney for several weeks," and it may be inferred from the complaint that she did not hear from the attorney again or receive additional assistance regarding her application before her "request to [a]djust [s]tatus to [g]reen [c]ard was denied" by defendant Board of Education, which the court interprets to mean refusing to support through accompanying filing or other material support. (Compl. ¶¶ 163, 276 (emphasis added); see also id. ¶ 235 ("After complaining the plaintiff's request for an Adjustment of Status was abruptly ended by Warren County Schools." (emphasis added))). See Lendo v. Gonzales, 493 F.3d 439, 441 (4th Cir. 2007) (explaining that, under one pathway to a "green card," an alien's employer or prospective employer must file a petition, a Form I-140, to be considered along with the alien's application to be granted lawful

10

permanent resident status).  This brief period between plaintiff's airing her grievances and defendant Board of Education allegedly withdrawing support of her visa application is akin to that recognized as sufficient by federal courts.  See, e.g., Sempowich, 19 F.4th at 654 (considering a time period of "about a month"); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015) (considering a two-and-a-half month gap between protected activity and an adverse action).

In sum, considering the interference with plaintiff's visa application as the pertinent adverse action, plaintiff has "nudge[d] [her] claims across the line from conceivable to plausible" as is required "to resist dismissal."  Wag More Dogs Liab. Corp. v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012).  Therefore, the court adopts the M&R's recommendation to dismiss the majority of plaintiff's claims and to allow her Title VII disparate treatment claim, discussed further below. The court does not adopt the M&R's recommendation to dismiss plaintiff's Title VII retaliation claim, instead, concluding it survives defendants' motion to dismiss as set forth herein.  Further, the court substitutes the Warren County Board of Education as the proper, and only, defendant, on the above analysis.

      2.      Defendants' Objections

Defendants' objection concerns the magistrate judge's recommendation that their motion to dismiss be denied as it relates to plaintiff's Title VII claim for national origin discrimination premised on the decision to not renew her contract and/or other termination of her employment with defendant Board of Education or the school it controlled.  Specifically, defendants challenge the magistrate judge's legal conclusion that plaintiff had exhausted administratively a claim for the non-renewal of her contract in May 2019 and that plaintiff had alleged adequately she suffered adverse employment action because of her national origin.  Both challenges fail, and the court addresses them in turn.

a. Administrative Exhaustion

As noted in the M&R, Title VII requires a plaintiff to file a charge of discrimination with the EEOC before filing suit. 42 U.S.C. § 2000e-5(e), (f)(1); Chacko v. Patuxent Inst., 429 F.3d 505, 508-09 (4th Cir. 2005). "The EEOC charge defines the scope of the plaintiff's right to institute a [later] civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). A "claim[] raised under Title VII [that] exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . [is] procedurally barred." Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995). Thus, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko, 429 F.3d at 506.

Defendants argue that because plaintiff's EEOC charge notes in a box on the form for "date(s) discrimination took place" that the earliest the discrimination took place was "11-20-2018" and the latest was "02-20-2019" and that the discrimination was not a continuing action, plaintiff has not exhausted administratively any claim for the May 2019 non-renewal of her contract. (EEOC Charge (DE 87-1) at 1). Defendants' objections fail to engage meaningfully with the magistrate judge's correct notation that plaintiff's charge, in its narrative section, describes that "[i]n May 2019, Dr. Whittaker, HR Director, advised me that my contract would not be renewed for the 2019-2020 school year due to budgetary constraints." (Id.; M&R (DE 112) at 10). Even assuming that this explicit reference to the May 2019 non-renewal in the EEOC was not enough to surmount plaintiff's demarcation of the relevant time period as running from November 2018 to February 2019, the court concludes (as the magistrate judge did) that any charges related to the May 2019 non-renewal would naturally have arisen from an investigation of

her complaints as to national origin-based discriminatory conduct three months prior, meaning claims related are not procedurally barred. Dennis, 55 F.3d at 156.

The court's decision herein aligns with the recognition that "EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013). Defendants' argument would turn, in this instance, "[t]he exhaustion requirement" into "a tripwire for hapless plaintiffs" and a "insurmountable barrier[] to litigation" premised on "overly technical concerns." Sydnor v. Fairfax County, 681 F.3d 591, 594 (4th Cir. 2012); see also Mercer v. PHH Corp., 641 F. App'x 233, 238-39 (4th Cir. 2016) (agreeing "with [plaintiff] that his failure to check [the race] box on the form is not dispositive" of the exhaustion inquiry and explaining "[i]nstead, [the court] look[s] at the charge as a whole, and the absence of a checked box is only one factor in [its] analysis"). This is not an instance were application of the "reasonably related" principle allows "broad terms" in the charge to "encompass a limitless number of other factual worlds" such that exhaustion requirement would be rendered "a nullity." Chacko, 429 F.3d at 512-13.

Defendants argue that "the actors involved in the non-renewal of the contract and the discrimination alleged in the Charge (and the Complaint) are necessarily different" based on their argument that statutorily her employment status was decided by defendant Board of Education, rather than any of individuals described in plaintiff's EEOC charge. This argument is more properly addressed in relation to defendants' argument that plaintiff's complaint fails to allege plausibly a Title VII discrimination claim, where defendants hinge each argument on their claim that defendant Board of Education was unaware of plaintiff's national origin.

b.　　　Adverse Action Because of a Protected Characteristic

Defendants argue that there is no factual allegation to support that defendant Board of Education, which they contend is statutorily the only entity capable of making the non-renewal decision, knew of plaintiff's national origin. Thus, they argue that plaintiff could not have suffered adverse employment action because of her national origin since the decisionmaker had no awareness of her national origin.

At its core, a Title VII claim must be supported by allegations of facts sufficient "to satisfy the elements of a cause of action created by that statute," meaning an adverse employment action <u>because of</u> plaintiff's protected characteristic. See <u>McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.</u>, 780 F.3d 582, 585 (4th Cir. 2015). Accordingly, the knowledge of the individual who made the adverse employment decision of the plaintiff's protected characteristic is pertinent to whether plaintiff suffered that adverse action because of his or her protected characteristic. See <u>Balas</u>, 711 F.3d at 410; <u>Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC</u>, 365 F. App'x 432, 440 (4th Cir. 2010). And even where discriminatory comments or statements that reflect a discriminatory attitude, have been made, there must be "a nexus between that negative attitude and the employment action." <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 608 (4th Cir. 1999).

Yet, "Title VII does not 'limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employer.'" <u>Id.</u> (quoting <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 290 (4th Cir. 2004) (en banc)). "[T]he person allegedly acting pursuant to a discriminatory animus need not be the 'formal decisionmaker' to impose liability upon an employer for an adverse employment action, so long as . . . the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action." <u>Hill</u>, 354 F.3d at 288-89

(quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 151-52 (2000)).  Thus, "[w]hen a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by [another employee], it is not inconsistent to say that the [other employee] is the actual decisionmaker or the one principally responsible for the contested employment decision." Id. at 290; see also Staub v. Proctor Hosp., 562 U.S. 411, 417, 422 (2011) (holding, in the context of a statute described as "very similar to Title VII," that "if a supervisor performs an act motivated by . . . animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable" (footnote omitted)).

The Fourth Circuit's opinion in Harris v. Powhatan County School Board, 543 F. App'x 343 (4th Cir. 2013), instructs on these principles.  There the court considered a claim brought under the Age Discrimination in Employment Act ("ADEA") at the summary judgment stage, analyzing specifically the district court's determination that the defendant school board's reasoning for eliminating a position was the only reasoning relevant since it was "the ultimate decisionmaker." Id. at 347.  The court concluded that the district court had erred where it did not consider the "motives and knowledge" of plaintiff's direct supervisor and, most importantly, the superintendent, who was "the day-to-day supervisor of the school system" and made the recommendations as to elimination of plaintiff's position.  Id. at 348 (citing Hill, 354 F.3d at 288-89); see also Hill, 354 F.3d at 290 (construing both Title VII and the ADEA).

Here, given that who constitutes an actual decisionmaker is a factual question, see, e.g., Schafer v. Maryland Dep't of Health & Mental Hygiene, 359 F. App'x 385, 389 (4th Cir. 2009), and that at this stage, the court construes the facts alleged in the light most favorable to plaintiff, the court cannot conclude that plaintiff fails to state a claim for Title VII relief.  Even crediting

15

defendants' assertion, not claimed in the complaint, that the relevant parties were acting in perfect adherence with the statutory scheme for renewal of teacher contracts, that scheme imagines the input of the "local school administrative unit" in deciding "which teachers in similar positions shall be subject to a dismissal" in "implementing a reduction in force" and that it will "consider work performance and teacher evaluations." N.C. Gen. Stat. § 115C-325.4(c)(1). Plaintiff specifically alleges defendant Brewer, who elsewhere she alleges made discriminatory comments and demonstrated personal animosity towards plaintiff, evaluated plaintiff's performance as a teacher. (See, e.g., Compl. ¶¶ 68, 70, 105, 147-48).

Moreover, liberally construed, plaintiff's complaint raises a reasonable inference that Brewer was the "actual decisionmaker or the one principally responsible for the contested employment decision." Hill, 354 F.3d at 288. Brewer is described as having day-to-day, discrete supervisory authority over plaintiff, and the ability to adjust what tasks plaintiff was responsible for, discipline her, and change her position at the school. (Compl. ¶¶ 3, 19, 36, 64, 71). Brewer is alleged to be responsible, at least, partially, for rating and commenting on plaintiff's performance under a "North Carolina State Evaluation System," (Id. ¶¶ 105, 147-48), which presumably would constitute "work performance and teacher evaluations" the local administrative unit would consider in deciding which teachers' positions to eliminate. N.C. Gen. Stat. § 115C-325.4(c)(1). Construing the facts in the light most favorable to pro se plaintiff, it is reasonably inferable that the critical evaluation and general negative view of plaintiff of Brewer, her primary supervisor, played a dispositive factor in whether plaintiff's contract was renewed for her position, making Brewer the one principally responsible for the contested employment decision. See, e.g., Harris, 543 F. App'x at 348.

Additionally, it is reasonable to infer on the facts alleged that the school system was aware of plaintiff's national origin given the assistance that was being provided initially to her in regard to her changing immigration status to lawful permanent residence. (See, e.g., Compl. ¶¶ 159, 234). Plaintiff's complaint alleges sufficiently, for this stage of proceedings, the relevant decisionmaker was aware of her national origin such that it could take adverse action against her because of it.

Finally, plaintiff pleads facts sufficient to raise a reasonable inference of a nexus between the alleged discriminatory attitude and the challenge employment action, to the extent such is necessary at this stage. Plaintiff alleges that who appears to be defendant Brewer told others in earshot of plaintiff that defendant Brewer was "going to send [plaintiff] back to Jamaica" as part of criticism of plaintiff's teaching ability, which they mocked. (See Compl. ¶ 68, 70). This mirrored national-origin-based discriminatory comments by plaintiff's coworker that an undescribed "We," inferentially including defendant Brewer given defendant Brewer's described close connection with that peer of plaintiff's, were "going to send [plaintiff's] [a**] back to Jamaica." (Compl. ¶¶ 9, 11). After or contemporaneous with the discriminatory comments, Brewer is alleged to have negatively evaluated plaintiff, evaluation which was relied upon by defendant Board of Education in deciding to not renew plaintiff's contract.

These allegations of "direct" instances of discrimination were joined by other allegations inferentially supporting her claim of discrimination: including that she was given belittling or less prestigious tasks other non-Jamaican teachers were not and did not receive the benefits that other non-Jamaican teachers received, and that, despite being told her position was being cut, plaintiff's position was filled by a non-Jamaican individual. (See, e.g., Compl. ¶¶ 3, 11, 13-14, 29, 32, 38-39, 180); see also Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (noting "different treatment from similarly situated employees outside the protected class" as an

element of a prima facie case of employment discrimination); Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005) (explaining that filling of a position "by similarly qualified applicants outside the protected class" may demonstrate partially a prima facie face of employment discrimination). Plaintiff's complaint has the factual content necessary to "demonstrate facial plausibility." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 554 (4th Cir. 2013).

C.     Remaining Matters

The parties raise no clear objection to the magistrate judge's recommendations to deny their remaining motions (DE 89, 103, 106, 109), and, thus, the court, discerning no clear error in those recommendations, denies those motions for the reasons explained in the M&R. As it relates to scheduling matters, following responsive pleading by defendant Board of Education, if any, the court will enter such further order as is warranted regarding planning and scheduling, as well as lifting the stay implemented by the court's March 8, 2021, order.

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss (DE 86) is GRANTED IN PART and DENIED IN PART, and the remaining motions (DE 89, 103, 106, 109) are DENIED. Plaintiff's claims for Title VII national origin discrimination, as described above, and for Title VII retaliation may proceed. Her remaining claims are DISMISSED. The clerk is DIRECTED to amend the caption of this case to reflect that Warren County Board of Education is the proper, remaining defendant, in place of Warren County Schools, and all other defendants are DISMISSED.

In addition, the clerk is DIRECTED to resubmit, by U.S. Mail, the clerk's letter regarding the Pro Bono Panel to plaintiff's address of record. If the clerk receives a request by plaintiff for

18

Case 5:20-cv-00595-FL   Document 118   Filed 09/26/22   Page 18 of 19

submission to the Pro Bono Panel, the clerk is DIRECTED, in addition to the materials submitted as a matter of course, to provide copy of the instant order to the panel.

SO ORDERED, this the 26th day of September, 2022.

                                                LOUISE W. FLANAGAN
                                                United States District Judge